UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF FRANK P. LAGANO, | : |
| Plaintiff, | : Hon. Faith S. Hochberg, U.S.D.J. |
| v. | : Civil Action No. 12-5441 |
| BERGEN COUNTY PROSECUTOR'S OFFICE; MICHAEL MORDAGA; and various JOHN DOE and JANE DOE defendants whose individual identities or wrongful acts are not now known to Plaintiff, | : **Opinion** : March 22, 2013 |
| Defendants. | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon a motion to dismiss Plaintiff's Complaint by Defendant Bergen County Prosecutor's Office pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court has considered the motion and reviewed the submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I. BACKGROUND**

   **A. Statement of Facts**

Plaintiff, the Estate of Frank P. Lagano (hereinafter "the Estate"), contends that Frank P. Lagano was shot on April 12, 2007, as a result of the Bergen County Prosecutor's Office (hereinafter "BCPO") personnel's disclosures to alleged members of traditional organized crime families that decedent was an informant for the Division of Criminal Justice (hereinafter "DCJ"). (Am. Compl. ¶ 32.)

Lagano's involvement with the DCJ began after personnel of the BCPO executed search and arrest warrants at Lagano's home on or around December 1, 2004.[1] (Am. Compl. ¶ 10.) During this search, the personnel of the BCPO seized at least $50,000.00 from Lagano's home and other items from Lagano's safe deposit box. (Am. Compl. ¶ 15.) Plaintiff alleges that contrary to standard police practice and the terms of the search warrant, the BCPO personnel conducting the search did not list the seized items in their inventory. (Am. Compl. ¶¶ 16, 17.) Rather, Plaintiff claims that the BCPO's personnel converted the seized items to their own benefit or to the benefit of their confederates or supervisors. (Am. Compl. ¶ 18.)

After the BCPO's search and seizure, Lagano met with Defendant Michael Mordaga, a personal friend and business relation. (Am. Compl. ¶¶ 11, 19.) Mordaga provided Lagano with an attorney's business card for Lagano's legal problems following the search and seizure. (Am. Compl. ¶ 20.) On January 13, 2005, the BCPO instituted a forfeiture action against Lagano and others pursuant to N.J. Stat. Ann. § 2C:65-1. (Defendant's Reply Brief in support of Motion to Dismiss; Exhibit A ¶ 1.) The BCPO indicated in the forfeiture action that a total of $265,428.00 was seized from Lagano during the search and seizure. (*Id.*, Exhibit A ¶ 3.) Following Lagano's death, his Estate was substituted in his place in the forfeiture action. (*Id.*, Exhibit D.)

At some point after the search and seizure, Plaintiff claims that James Sweeney, a former employee of the DCJ, persuaded Lagano to become an informant for the DCJ.[2] (Am. Compl. ¶

---

[1] Plaintiff asserts that some of the personnel involved in this search and seizure are likely the John Doe and Jane Doe Defendants included in the Complaint. (Am. Compl. ¶ 10.)

[2] Plaintiff notes that the facts regarding Lagano's death are based upon allegations in the Complaint filed on September 1, 2010 by James Sweeney against the State of New Jersey in the Superior Court of New Jersey, Law Division, Bergen County. (Am. Compl. ¶ 9.) Sweeney's Complaint against the State of New Jersey, and others, brought pursuant to the New Jersey Racketeer Influenced and Corrupt Organizations Act, alleged that Defendants acted for, and aided in, unlawful and corrupt enterprises. *Sweeney v. New Jersey*, Docket No. L-8430-10, (N.J.

22). Plaintiff then contends that Mordaga informed Lagano that he could not "count on Sweeney helping" with Lagano's legal problems because "Sweeney is going to jail."[3] (Am. Compl. ¶ 30.) Plaintiff claims that thereafter BCPO personnel disclosed that Lagano had been an informant to alleged members of certain crime families that had also been arrested in raids on the same day as Lagano. (Am. Compl. ¶ 32.)

Therefore, Plaintiff contends that the BCPO and its personnel's failure to protect Lagano's status as an informant for the DCJ created a dangerous situation that resulted in Lagano's death on April 12, 2007. (Am. Compl. ¶¶ 36, 37.)

### B. Procedural History

In the Amended Complaint, the Estate asserts three counts. (Am. Compl. ¶¶ 41-51.) In Count One, Plaintiff claims a violation of Lagano's civil rights pursuant to 42 U.S.C. § 1983. (Am. Compl. ¶¶ 41-44.) Plaintiff argues that once Lagano was recruited to be an informant for the DCJ it "established a state-created danger that the informant could be harmed for assisting law enforcement if the informant status were gratuitously disclosed." (Am. Compl. ¶ 42.) In Count Two, the Estate claims that Defendants' actions in allowing Lagano's identity to be divulged violated the New Jersey Civil Rights Act. (Am. Compl. ¶¶ 45-47.) In Count Three, Plaintiff alleges that Defendants violated 42 U.S.C. §§ 1983 and 1985 by conspiring to and converting Lagano's property when the search and arrest warrants were executed on December 1, 2004. (Am. Compl. ¶¶ 48-51.) Plaintiff seeks compensatory damages, punitive damages, and any further relief that the Court deems appropriate for all counts. (Am. Compl. ¶¶ 44, 47, 51.)

---

Super. Sep. 1, 2010). In Sweeney's Complaint, he asserts facts about Lagano's 1) position as an informant; 2) involvement with organized crime families; and 3) eventual death. *Id.*

[3] At this point the relationship between Lagano and Mordaga had "soured." (Am. Compl. ¶ 21.)

The BCPO now moves to dismiss Plaintiff's Complaint against the BCPO, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (D. Br. 2.)

## II. DISCUSSION

The BCPO advances three key arguments in support of its Motion to Dismiss: (1) the BCPO is not a "person" under 42 U.S.C. §§ 1983 and 1985 or the New Jersey Civil Rights Act; (2) the BCPO is entitled to Eleventh Amendment Immunity; and (3) Plaintiff's claims are barred by the statute of limitations.  (D. Br. 2.)[4]

### A. Whether the BCPO is a "Person" Subject to Liability

1. 42 U.S.C. §§ 1983 and 1985

Defendants argue that this court should apply the United States Supreme Court's rationale in *Will v. Michigan Dept. of State Police*, finding that states, state agencies, and state officials are not "persons" within the meaning of § 1985.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Defendants also argue that this rationale should apply equally to § 1983.  In *Will*, the Supreme Court held that neither states nor state officials acting in their official capacities were "persons" within the meaning of the federal civil rights statute, 42 U.S.C. § 1985.  *Will*, 491 U.S. at 58.  Though this holding applies strictly to 42 U.S.C. § 1985, courts have frequently interpreted the *Will* holding to apply to 42 U.S.C. § 1983 as well.  *See*, *e.g.*, *Ray v. New Jersey*, 219 Fed.Appx. 121, 124 (3d. Cir. 2007) (holding that prosecutorial immunity shielded state prosecutor from liability for damages in action filed pursuant to only § 1983); *Flesch v. E. Pa. Psychiatric Inst.*, 434 F. Supp 963, 975 (E.D. Pa. 1977) (finding that courts are

---

[4] Defendant also set forth additional arguments for dismissal: (1) Plaintiff fails to state a claim for which relief could be granted; (2) Plaintiff fails to set forth a plausible claim for relief with respect to its state-created danger claim; (3) Plaintiff fails to timely file a notice of claim; and (4) if the Court finds that this Complaint should not be dismissed in its entirety, then it should grant the BCPO's request to compel Plaintiff to file a more definite statement.  (D. Br. 2.)  The Court declines to reach these arguments because it finds that dismissal of the Complaint against the BCPO is warranted for the reasons set forth herein.

in agreement that the analysis of the word "person" under § 1983 applies equally to use of the word "person" in § 1985); *see also*, *Sykes v. California (Department of Motor Vehicles)*, 497 F.2d 197, 201-02 (9th Cir. 1974); *Milburn v. Girard*, 429 F.Supp. 865, 867-68 (E.D. Pa. 1977); *Santiago v. N.Y. St. Dep't of Corr. Servs.*, 725 F. Supp. 780, 783-84 (S.D.N.Y. 1989).

So long as a county prosecutor's office acts within its classic duties, that office is a state agency. *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d. Cir. 1996) (abrogated on other grounds). In the instant case, the BCPO was acting within its classical function of investigating criminal activities and conducting criminal prosecutions with respect to Mr. Lagano. Accordingly, the BCPO is a state agency, and as such, is not a "person" under 42 U.S.C. §§ 1983 and 1985. *Flesch*, 434 F. Supp at 975. Therefore, Plaintiff's claims in Counts One and Three, brought under 42 U.S.C. §§ 1983 and 1985, are dismissed.

2. New Jersey Civil Rights Act

The New Jersey Civil Rights Act requires that a defendant be a "person" to be subject to suit. N.J. Stat. Ann. § 10:6-1 to -2. The word "person" in New Jersey legislation includes the state, but only "when used to designate the owner of property which may be the subject of an offense." N.J. Stat. Ann. § 1:1-2.

Defendant maintains that the claims in Count Two, which are brought pursuant to the New Jersey Civil Rights Act, must be dismissed for the same reason, *i.e.*, Defendant is not a "person." Defendant argues that though state agencies and officials in New Jersey can be deemed a "person" under the New Jersey legislative enactments, this is only permitted where a property owner has been victimized. Because Plaintiff makes a claim under the New Jersey Civil Rights Act, Defendant argues that this is not a case involving a victimized property owner, and therefore it is not a "person." Plaintiff contends, however, that Lagano was a victimized property owner because of the BCPO's improper seizure of items from his house.

Because Plaintiff's claim under the New Jersey Civil Rights act is for a violation of rights as to the state-created danger theory, the BCPO is not a "person" because Plaintiff is not a victimized property owner. However, Plaintiff's property claim is only brought under 42 U.S.C. §§ 1983 and 1985 in Count Three of the Complaint, not within the NJCRA claim. Accordingly, Count Two will also be dismissed because the BCPO is not a "person" within the meaning of the New Jersey Civil Rights Act.

### B. Eleventh Amendment Immunity and 12(b)(1)

In the alternative, Defendants argue that New Jersey and its agencies and officers are immune from suit brought in federal court under the Eleventh Amendment because the State of New Jersey has not consented to jurisdiction in federal court. More specifically, Defendants argue that the BCPO was engaging in classic law enforcement and investigative functions, and thus were acting as officers of the State during the series of events which form the basis for Plaintiff's Complaint.

The Eleventh Amendment offers immunity to states and their officers acting on behalf of the state so long as the state is the real party in interest. *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d. Cir. 1989). In determining whether the state is the real party in interest, the Third Circuit has applied a three-pronged test: "(1) whether the money that would pay the judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of autonomy the agency has." *Id.* The Third Circuit, in applying these factors, has found that when New Jersey county prosecutors engage in classic law enforcement and investigative functions, they are acting as officers of the state. *Coleman*, 87 F.3d at 1505. Additionally, the Supreme Court has determined that state prosecutors who act within the scope of their duties have absolute immunity from civil suits. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, when county prosecutors perform "administrative tasks unrelated to their

strictly prosecutorial functions, then the prosecutor acts on behalf of the county and not the state." *Coleman*, 87 F.3d at 1505.

Because this Court has already determined that the BCPO's actions fell within the scope of traditional law enforcement and investigative functions, the BCPO is entitled to immunity from suit and the claims against it are dismissed. *See Imbler*, 424 at 422-23 (finding that "unfounded litigation would cause a deflection of the prosecutor's energies from his public duties" and that a prosecutor might "shade his decisions instead of exercising the independence of judgment required by his public trust.").

### C. Statute of Limitations

In addition, Defendant maintains that Count Three of Plaintiff's Complaint is also barred by the statute of limitations.[5] Defendant argues that Plaintiff knew or should have known that the seizure of Lagano's property was allegedly improper at the time of the first lawsuit, which was filed in 2005. Therefore Defendant claims that Plaintiff's property claim contained in Count Three would have expired in 2007. Claims seeking damages in tort arising under New Jersey law, and for violations of civil rights under 42 U.S.C. §§ 1983 and 1985 are subject to a two-year statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Freeman v. State*, 347 N.J. Super 11, 21-22 (App. Div. 2002).

Lagano, prior to his death, filed an Answer in the forfeiture action on March 9, 2005, thereby acknowledging his awareness of the search and seizure claims in 2005. Additionally, the Estate of Lagano was substituted into the forfeiture action after Lagano's death in 2007.

---

[5] Defendant additionally argues that Counts One and Two should be dismissed because of the statute of limitations, however, the Court finds that it is likely that Plaintiff only discovered the facts which form the bases for Counts One and Two from the filing of James Sweeney's Complaint on September 1, 2010 in the Superior Court of New Jersey. Therefore, because Plaintiff's initial Complaint was filed on August 29, 2012, it appears these claims may be timely. Nonetheless, these claims are being dismissed on other grounds.

Therefore, Plaintiff knew or should have known about the search and seizure claims at the time of filing of Lagano's Answer on March 9, 2005, or at the latest, in 2007, when the Estate became involved in that action. Upon substitution into the forfeiture action, the Estate had access to Lagano's documents and filings involving the search and seizure matters. However, Plaintiff did not file the instant action until August 29, 2012, well beyond the two year statute of limitations. Accordingly, Count Three is barred by the statute of limitations.

## III. CONCLUSION

For the reasons set forth above, the Complaint as against the BCPO will be dismissed with prejudice, in its entirety. An appropriate Order follows.

**s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.