UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF FRANK P. LAGANO, | Civil Action No. 12-5441(FSH) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| BERGEN COUNTY PROSECUTOR'S OFFICE; MICHAEL MORDAGA; and various JOHN DOE and JANE DOE defendants whose individual identities or wrongful acts are not now known to Plaintiff, | June 19, 2013 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Michael Mordaga's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court has considered the motion and reviewed the submissions of the parties pursuant to Fed. R. Civ. P. 78.

## I. BACKGROUND

### A. Statement of Facts

Plaintiff, the Estate of Frank P. Lagano ("the Estate"), alleges that Frank Lagano was shot and killed on April 12, 2007, as a result of the Bergen County Prosecutor's Office ("BCPO") personnel's disclosures to alleged members of traditional organized crime families that Lagano was a confidential informant for the Division of Criminal Justice ("DCJ"). The Estate claims that Michael Mordaga ("Defendant"), Chief of Detectives in the BCPO, was at all times relevant to this action.

Lagano's relationship with the DCJ began after the BCPO executed search and arrest warrants at Lagano's home on December 1, 2004.[1] During the search, the BCPO seized at least $50,000 from Lagano's home and additional items from his safety deposit box. The Estate claims that the BCPO failed to follow standard police practice and the terms of the search warrant while conducting the search because the personnel did not list the seized items in their inventory. The Estate further alleges that personnel of the BCPO converted the seized items to their own benefit or to the benefit of their supervisors.

After the BCPO's search, Lagano met with Defendant, a personal friend and business associate, where Defendant referred Lagano to an attorney to help him with his legal situation. On January 13, 2005, the BCPO instituted a forfeiture action against Lagano pursuant to N.J. Stat. Ann. § 2C:65-1. The BCPO specified that a total of $264,428 was seized from Lagano during the search and seizure. Lagano's answer to the forfeiture action, dated March 9, 2005, did not challenge the amount of money reported nor allege any theft or wrongful conversion. After Lagano's death in 2007, the Estate was substituted into the forfeiture action.

Sometime after the search and seizure, the Estate claims that Sweeney, a former employee of the DCJ, induced Lagano to become a confidential informant for the DCJ.[1] The Estate claims that Defendant informed Lagano that he could not "count on Sweeney helping because Sweeney is going to jail." The Estate alleges that thereafter BCPO personnel disclosed

---

[1] The Estate notes that the facts regarding Lagano's death are based upon allegations in the Complaint filed on September 1, 2010 by James Sweeney against the State of New Jersey in the Superior Court of New Jersey, Law Division, Bergen County. Sweeney's Complaint against the State of New Jersey, and others, brought pursuant to the New Jersey Racketeer Influenced and Corrupt Organizations Act, alleged that Defendants acted for, and aided in, unlawful and corrupt enterprises. *Sweeney v. New Jersey,* Docket No. L-8430-10 (N.J. Super. Sep. 1, 2010). In Sweeney's Complaint, he asserts facts about Lagano's (1) position as an informant; (2) involvement with organized crime families; and (3) eventual death. *Id.*

to alleged members of traditional organized crime families that Lagano was working as a confidential informant. The Estate claims that the BCPO and Defendant's failure to protect Lagano's status as a confidential informant for the DCJ created a dangerous situation that resulted in Lagano's death on April 12, 2007.

### B. Procedural History

The Estate asserts three counts against Defendant in the Amended Complaint. In Count I, the Estate claims a violation of Lagano's civil rights pursuant to 42 U.S.C. § 1983. The Estate contends that when Sweeney recruited Lagano as an informant, it was understood that a state created danger was established since Lagano could be harmed if his status was disclosed. Count II claims that when Defendant allowed Lagano's status as an informant to be disclosed, he violated the New Jersey Civil Rights Act ("NJCRA"). In Count III, the Estate alleges that Defendants violated 42 U.S.C. § 1983 and § 1985 by both conspiring to and converting Lagano's seized property to their personal benefit.

The BCPO moved to dismiss the Estate's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In an opinion on March 22, 2013, this Court dismissed all three counts against the BCPO. The Court found that the BCPO was not a "person" under §1983, §1985, and the NJCRA; the BCPO was protected by Eleventh Amendment Immunity; and Count III was barred by the statute of limitations. Defendant Mordaga now moves to dismiss the Estate's Complaint against him, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. DISCUSSION

Defendant Michael Mordaga advances four main arguments in support of his Motion to Dismiss: (1) the Estate's claims are barred by the statute of limitations; (2) Defendant is protected by the doctrine of qualified immunity; (3) Defendant is not a "person" within the

meaning of 42 U.S.C. §§ 1983 and 1985 or the New Jersey Civil Rights Act; and (4) the Estate fails to state a claim for which relief can be granted.[2]

### A. Statute of Limitations

Defendant argues that Count III of the Estate's Complaint is barred by the statute of limitations.[3] Defendant claims that the Estate knew or should have known that the seizure was allegedly improper when Lagano was notified of the forfeiture action regarding the seized property in 2005. Thus, Defendant contends that Count III would have expired in 2007. Claims

---

[2] Defendant argues that the Estate fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because the Estate's factual allegations are conclusory statements and are not entitled to an assumption of truth. To state a plausible claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court must "accept all factual allegations as true, construe the complaint in light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The plaintiff must provide sufficient factual allegation that state a plausible claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The factual content provided in the complaint should allow "the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* Detailed factual allegations are not required; however, the court does not need to accept conclusory statements as facts. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must allege adequate factual content to demonstrate that the claims are facially plausible, more than just a possibility. *Id.*

While this Court need not reach this issue because of the rulings set forth herein, the Court does note that the key allegation that Lagano's status as an organized crime informant resulted in his subsequent murder is not supported by any factual content. It relies on a civil complaint filed by Sweeney several years earlier in state court. In this case, the Estate offers no facts to supports its contention that Defendant disclosed Lagano's status as a confidential informant and caused his murder. This is a bare conclusory statement. With regard to the search and seizure claim, Lagano's Answer in the forfeiture action did not argue any discrepancy between the amount seized and the amount reported, by stark contrast to the purported facts claimed by the Estate here. While the Court need not reach this question because of the above rulings, this case would present serious *Iqbal* concerns.

[3] In addition, Defendant argues that Counts I and II should be dismissed because of the statute of limitations; however, the Court finds that it is likely that the Estate only discovered or had reason to discover the facts which form the basis for Counts I and II after the filing of Sweeney's Complaint on September 1, 2010 in the Superior Court of New Jersey. Thus, since the Estate's Complaint was initially filed on August 29, 2012, it appears these claims may be timely.

4

seeking damages in tort arising under New Jersey law, and for violations of civil rights under 42 U.S.C. §§ 1983 and 1985 are subject to a two year statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Freeman v. State,* 347 N.J. Super 11, 21-22 (App. Div. 2002). The statute of limitations period accrues when "the plaintiff knows or has reason to know of the inquiry which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

On March 9, 2005, Lagano filed an Answer in the forfeiture action, thereby acknowledging his awareness of the alleged claim. Subsequently, in 2007, the Estate was substituted into the forfeiture action after Lagano died. The plaintiff knew or had reason to know about the search and seizure claims at the filing of Lagano's Answer in 2005, or at the latest, when the Estate was substituted into the action in 2007. Once the Estate became involved in the forfeiture action, it had access to all of Lagano's documents and filings regarding the search and seizure matters. Even assuming the latest possible time of accrual when the Estate took over in 2007, the statute of limitations would still bar the claim in 2009. The Estate did not file this action until August 29, 2012, approximately five years after it became aware of the forfeiture action. Accordingly, Count III is barred by the statute of limitations.

### B. The Doctrine of Qualified Immunity

Defendant maintains that he should be protected by the doctrine of qualified immunity as to Counts I and II of the Estate's Complaint.[4] Defendant argues that the Estate fails to establish a

---

[4] Additionally, Defendant argues that he is protected by the doctrine of qualified immunity as to Count III because the Estate does not plead a 4th Amendment violation, but rather alleges a claim in tort. The Amended Complaint is most logically read o be alleging a theft rather than an unlawfully executed search warrant. "[T]he Bergen County Prosecutor's Office personnel who conducted the search, including the John Doe Defendants, converted the seized items mentioned in paragraph 15 to their own benefit or to the benefit of their confederates or supervisors." The

5

violation of a constitutional right under the state created danger exception, and even if a constitutional right could arguably be fashioned by some courts, the doctrine of qualified immunity would still apply because the constitutional right was not clearly established.

The doctrine of qualified immunity protects government officials "from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a qualified immunity defense there is a two prong test. The plaintiff must demonstrate that his alleged facts show that a constitutional right was violated, and that the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009). The court no longer has to follow the rigid *Saucier* procedure, which mandated the court to evaluate the first and second prongs in sequential order. Now, the court can consider either the first or second prong initially. *Id*.

Defendant contends that even if the Estate pleads a plausible §1983 or NJCRA claim pursuant to the "state created danger" exception, he would still be protected by the doctrine of qualified immunity because the constitutional right was not clearly established.[5] There are no

---

complaint fails to mention anything about the warrant lacking probable cause or the on-going forfeiture action. It appears that this is not a 4th Amendment claim, but rather a claim in tort.

[5] Defendant also contends that Counts I and II fail to state a constitutional claim pursuant to the state created danger exception. The state created danger doctrine will provide a cause of action where: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996). This Court finds Defendant's argument as to the fourth element compelling because it appears Lagano was a greater cause of his own harm than the alleged conduct of the Defendant. Lagano created his own danger when he voluntarily chose to associate with members of organized crime and then voluntarily became a confidential informant against them. *See Summar ex rel. Summar v. Bennerr*, 157 F.3d 1054, 1059 (6th Cir. 1998).

published cases that extend the state created danger right to confidential informants in the Third Circuit. The Estate relies on some case law from other circuits and the discussion in *Cherry v. City of Philadelphia*, a Third Circuit case that only considered the possibility of extending the right to confidential informants, but did not so hold. The case *sub judice* was dismissed on other grounds. 2004 U.S. Dist. Lexis 23082, at *15 (E.D. Pa. Nov. 15, 2004). Although, the Estate provides persuasive case law from other jurisdictions, it would be unfair to hold that a constitutional right was "clearly established" before any case in this circuit has made such a decision. Therefore, a confidential informant's constitutional right to nondisclosure, pursuant to the state created danger exception, is not clearly established, and Defendant is entitled to protection under the doctrine of qualified immunity. Accordingly, the Estate's claims in Counts I and II, brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, are dismissed.

### C. "Person" Amenable to Suit

1. 42 U.S.C. §§ 1983 and 1985

In the alternative, Defendant argues that Counts I and III of the Estate's Complaint should be dismissed because he is not a "person" within the meaning of §§ 1983 and 1985. States, state agencies, and state officials acting in their official capacities are not "persons" pursuant to 42 U.S.C. § 1985. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989). Additionally, many courts have applied this Supreme Court holding to § 1983 as well. *See e.g., Flesch v. E. Pa. Psychiatric Inst.*, 434 F.Supp 963, 975 (E.D. Pa. 1977); *Also See e.g., Ray v. New Jersey*, 219 Fed.Appx. 121, 124 (3d Cir. 2007). Prosecutor's office officials acting within their classic duties are considered state officials. *Coleman v. Kaye,* 87 F.3d 1491, 1505 (3d. Cir. 1996).

This Court previously determined that the BCPO was acting within its classical function of investigating criminal activities and conducting criminal prosecutions with respect to Lagano, and therefore was a state agency and was thus not a "person" under 42 U.S.C. §§ 1983 and 1985. Similarly, Defendant was acting as the Chief of Detectives in the BCPO, a state agency. Therefore, Defendant was acting as a state official in his official capacity in connection with the allegations made by Lagano's Estate and is not a "person" amenable to suit under §§ 1983 and 1985. Accordingly, the Estate's claims in Counts I and III are dismissed.

2. The New Jersey Civil Rights Act

Defendant maintains that Count II must be dismissed because he is not a "person" subject to suit under the New Jersey Civil Rights Act. Similar to §§ 1983 and 1985, the New Jersey Civil Rights Act also requires that the defendant be a "person" to be subject to suit. N.J. Stat. Ann. § 10:6-1 to 2. However, under the NJCRA, the term "person" includes the state and state officials "when used to designate the owner of property which may be the subject of an offense." N.J. Stat. Ann. § 1:1-2.

Defendant argues that state officials can only be deemed a "person" under the NJCRA where a property owner has been victimized. Count II involves a civil rights action concerning a state created danger, not a property claim. The Estate's property claim is brought in Count III of the Amended Complaint pursuant to §§ 1983 and 1985. Thus, Defendant is not considered a "person" amenable to suit under the NJCRA, and Count II is dismissed.

### III. CONCLUSION

For the reasons set forth above Defendant's Motion to Dismiss is granted and the Complaint against Defendant Michael Mordaga is dismissed.

s/ **Faith S. Hochberg**\
Hon. Faith S. Hochberg, U.S.D.J.