**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF FRANK P. LAGANO,<br><br>*Plaintiff*,<br><br>v.<br><br>BERGEN COUNTY PROSECUTOR'S OFFICE; MICHAEL MORDAGA; and various JOHN DOE defendants whose individual defendants whose individual identities or wrongful acts are not now known to Plaintiff,<br><br>*Defendants*. | Civil No.: 12-cv-5441 (KSH) (CLW)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.    Introduction**

This matter comes before the Court on the appeals (D.E. 434, 449) of plaintiff, the Estate of Frank P. Lagano, from two orders of Magistrate Judge Cathy L. Waldor.  In her orders, Judge Waldor: (i) granted motions to quash brought by defendant Bergen County Prosecutor's Office ("BCPO") and non-party New Jersey Division of Criminal Justice ("DCJ"), but permitted the Estate to serve 10, single-question interrogatories on the DCJ's Chief Investigator; (ii) sustained objections to those interrogatories and allowed them to be served in a narrowed-down format; and (iii) denied the Estate's motion for a stay and a 60-day extension of the fact-discovery deadline.  For the reasons set forth below, Judge Waldor's orders are affirmed.

**II.   Background**

   **A.   Factual Background**

The background facts are gleaned from the second amended complaint ("SAC").  (D.E. 66.)  Briefly, on or about December 1, 2004, personnel of the BCPO executed search and arrest

warrants at Frank Lagano's home. (SAC ¶ 10.) While executing the warrants, the BCPO seized at least $50,000 in cash from Lagano's home and seized other items from his safe deposit box. (*Id.* ¶ 15.)

Lagano had a business and social relationship with the Chief of Detectives for the BCPO, defendant Michael Mordaga. (*Id.* ¶¶ 5, 11-12.) According to the SAC, "[f]ollowing his arrest on December 1, 2004, [Lagano] was taken to see . . . Mordaga. At that time, Mordaga handed [him] an attorney's business card, and told [him] to provid[e] that attorney with $25,000.00 and then 90% of [his] problems would go away." (*Id.* ¶¶ 19-20.) The relationship between Mordaga and Lagano "soon soured." (*Id.* ¶ 21.)

Lagano was later induced to become a confidential informant for the DCJ, which "inherently create[d] a dangerous condition, in that disclosure of [his] identity [would] foreseeably result in harm." (*Id.* ¶¶ 22-23.) The SAC alleges that Mordaga learned that Lagano was acting as a confidential informant and that he and other members of the BCPO intentionally disclosed this to "alleged members of traditional Organized Crime families" who had also been arrested in raids on December 1, 2004. (*Id.* ¶¶ 31-32.) On the afternoon of April 12, 2007, Lagano was fatally shot in the head outside a diner he co-owned in East Brunswick, New Jersey. (*Id.* ¶ 33.)

### B. Relevant Procedural History

Lagano's Estate sued defendants on August 29, 2012, alleging causes of action for denial of substantive due process of law by creating a dangerous condition in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2.C, as well as Fourth

Amendment violations.[1] (D.E. 1.) Initially defendants prevailed in dispositive motion practice before the district court. (*See* D.E. 27-28, 42-43.) The Estate appealed and successfully restored the § 1983 and NJCRA causes of action. (D.E. 46-47.) After defendants' unsuccessful attempt to renew their motion to dismiss (D.E. 54), the assigned district court judge granted the Estate leave to file the SAC. (*See* D.E. 63, 66.)

As of January 2016, formal discovery began. (*See* D.E. 51.) The case was twice reassigned to different district judges, whose assigned magistrate judges entered orders and held conferences as discovery progressed. (*See, e.g.*, D.E. 170, 243, 244, 267, 306, 307.) The undersigned and Judge Waldor have been assigned the case since June 14, 2017. (D.E. 191.)

On or about June 8, 2017, the Estate served its first Rule 30(b)(6) deposition notice on the BCPO. (D.E. 223-6.) The Estate proceeded to depose a BCPO representative, though it is unclear from the record whether the representative was designated a Rule 30(b)(6) witness. (*See* D.E. 432, 7/8/20 Transcript at 30:1-32:1.)

In May 2019, the Estate engaged its third attorney of record, and Judge Waldor granted a six-month period during which counsel could familiarize himself with the case file and address any discovery disputes. (*See* D.E. 354-60.) At the ensuing case management conference on November 14, 2019, Judge Waldor set a fixed fact discovery cut-off date of March 31, 2020 and warned that the parties would not be granted any extensions. (*See* D.E. 364.)

The Estate proceeded to seek additional documents and interrogatory responses from Mordaga and the BCPO, and moved to compel their production in December 2019. (*See* D.E. 368.) Mordaga and the BCPO opposed the motion, and the BCPO cross-moved to compel the

---

[1] In the original complaint, the Estate named the State of New Jersey as a defendant. The Estate filed its first amended complaint (D.E. 5) on December 12, 2012, which asserted the same causes of action as the original complaint but omitted the State of New Jersey as a defendant.

3

Estate's production of additional interrogatory responses. (*See* D.E. 372, 373.) Judge Waldor denied both motions on January 13, 2020. With regard to the Estate's motion, she reasoned that "all issues raised had previously been brought before this Court beginning at the latest in June 2017 and discussed at length during numerous conferences," and cautioned that the Estate would "not be permitted to re-litigate discovery issues on the eve of the close of discovery for this extremely protracted litigation." (D.E. 379.) Judge Waldor counseled that "[a]ny information or documents sought in Plaintiff's Motion to Compel should be addressed through the deposition of Mordaga, which could result in supplemental productions." (*Id.*) As to the BCPO's motion, Judge Waldor reasoned that the BCPO "had ample opportunity over the course of the four depositions of Plaintiff to address any potential deficiencies in Plaintiff's interrogatory responses." (*Id.*)

      Following entry of Judge Waldor's January 13, 2020 order, the Estate continued to issue discovery requests and subpoenas. For example, on January 30, 2020, the Estate served a subpoena on non-party Paul Morris, the Chief Investigator for the DCJ, seeking both the production of documents and his deposition testimony. (D.E. 395-3 at Ex. E.) The Estate also served the DCJ with a second document subpoena on March 2, 2020, which included a letter request to conduct depositions of several current and former DCJ employees, and a third subpoena dated March 12, 2020, seeking both the production of documents and a corporate designee for deposition. (D.E. 415-2 at Exs. A, B.) The Estate also served a 30(b)(6) notice of deposition and a third set of requests for the production of documents on the BCPO, and served subpoenas seeking the BCPO's banking records from two financial institutions. (D.E. 401-4, 401-5, 401-6.)

4

The DCJ moved to quash the subpoena served on Morris (D.E. 395) and the two other subpoenas for documents and a corporate deposition (D.E. 415), and the BCPO also moved for an order barring the notice of deposition and requests for production on the BCPO and the subpoenas seeking the BCPO's banking records (D.E. 401). In response, the Estate moved for a 60-day extension of the March 31, 2020 fact discovery deadline and for a stay of discovery. (D.E. 405.)

Judge Waldor held a hearing to address the parties' motions on July 8, 2020. (D.E. 432.) With regard to the DCJ's motion to quash the subpoena served on Morris, Judge Waldor heard competing arguments regarding the necessity of deposing him for reasons that included the fact that another individual with requisite knowledge—defendant Mordaga—had already been deposed. (*Id.* at 18:3-19:5.) Judge Waldor granted the motion to quash, but permitted the Estate to submit ten proposed single-question interrogatories directed to Morris by July 30, 2020 for her review. (*Id.* at 23:17-18; *see also* D.E. 428.) She gave the DCJ an opportunity to object and the Estate to reply. (*See* D.E. 428.) Turning to its second motion, the DCJ argued that the requests in the subpoena for documents and a corporate deposition "go back 40 years," are comprised of "23 subcategories," and have no "bearing on the cause of action that [is] pled in the second amended complaint." (7/8/20 Transcript at 38:12-39:4.) Ultimately, Judge Waldor granted the DCJ's motion in its entirety. (*See id.* at 39:17-18; *see also* D.E. 430.)

As to the BCPO's motion to quash, the parties agreed that the Estate had previously deposed a BCPO representative, though counsel for the Estate was "not certain" whether that representative was deposed as a 30(b)(6) witness. (*See* 7/8/20 Transcript at 30:9-13.) After hearing from the parties regarding what further information could be derived from a 30(b)(6) deposition, Judge Waldor determined that the Estate's 30(b)(6) request was "not substantiated."

5

(*Id.* 32:2-6.)  She also accepted the BCPO's argument that the Estate's document requests were unduly burdensome and would take "months to comply with," and granted the BCPO's motion to quash.  (*Id.* at 27:21-25; *see* D.E. 430.)

Finally, Judge Waldor denied the Estate's motion for a stay and to extend the fact-discovery deadline.  In reaching her decision, she reminded the parties of her prior ruling that she was not "going to allow [them] to meander to oceans of new requests."  (7/8/20 Transcript at 29:13-15; *see* D.E. 430.)

The next day, Judge Waldor memorialized her rulings in a written order (the "July 9 Order") (D.E. 430) and the Estate provided its proposed Morris interrogatories followed by objections and reply.  (D.E. 437, 443, 446, 447.)   In an order filed August 26, 2020 (the "August 26 Order") (D.E. 448), Judge Waldor approved six of the Estate's interrogatories, struck one interrogatory as written and three interrogatories as improper, and drafted one additional interrogatory.  (D.E. 448.)

The Estate has appealed both the July 9 Order and the August 26 Order.  (D.E. 434, 449.)

### III.     Standard of Review

On appeal from a magistrate judge's ruling on non-dispositive matters, which include discovery-related motions, *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996), the district court must determine whether the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (district judge to "modify or set aside any part of the order that is clearly erroneous or is contrary to law"); L. Civ. R. 72.1(a)(1), (c)(1)(A) (same).  Findings of fact are reviewed for clear error and matters of law are reviewed *de novo*.  *See EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

6

A magistrate judge's finding is clearly erroneous if, "although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Wag Acquisition, LLC v. Gattyán Grp.*, 2020 WL 5105194, at *2 (D.N.J. Aug. 31, 2020) (McNulty, J.) (citation and internal quotation marks omitted); *accord Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002). The ruling is "contrary to law" if the magistrate judge "has misinterpreted or misapplied applicable law." *Wag Acquisition*, 2020 WL 5105194, at *2 (citation and internal quotation marks omitted). The burden is on the appellant to show that the decision was clearly erroneous or contrary to law. *Id.*

## IV. Discussion

### A. The Estate's Appeal of the July 9 Order

The Estate argues that Judge Waldor abused her discretion in issuing the July 9 Order with respect to all four of the motions to which it refers, namely: (i) the BCPO's motion (D.E. 401) to quash the 30(b)(6) deposition notice and the Estate's third set of requests for the production of documents; (ii) the DCJ's motion (D.E. 415) to quash subpoenas served upon it for documents and for a 30(b)(6) deposition; (iii) the DCJ's motion (D.E. 395) to quash the deposition subpoena directed to Morris; and (iv) the Estate's motion (D.E. 405) for an extension of the March 31, 2020 fact discovery deadline and for a stay of discovery. (*See* D.E. 434-1, July 9 Order Moving Br.) The Court will address the Estate's arguments regarding each of the motions in turn.

#### i. The BCPO's Motion to Quash 30(b)(6) Deposition Notice and Third Set of Document Requests

The Estate first argues that Judge Waldor erred in granting the BCPO's motion to quash the Estate's 30(b)(6) deposition notice by accepting the BCPO's erroneous assertion during the

7

July 8 hearing that a 30(b)(6) deposition had already taken place. The Estate claims the BCPO had only produced a corporate representative who was deposed not as a 30(b)(6) witness but in a more limited, fact witness capacity. Relying on *Bracco Diagnostics Inc. v. Amersham Health Inc.*, 2005 WL 6714281 (D.N.J. Nov. 7, 2005) (Bongiovanni, Mag. J.) and *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, 2011 WL 1466369 (D.N.J. Apr. 18, 2011) (Arpert, Mag. J.), the Estate argues that the BCPO's fact witness deposition was not an adequate substitute for a Rule 30(b)(6) deposition, and thus Judge Waldor abused her discretion in quashing the Estate's 30(b)(6) deposition notice. (July 9 Order Moving Br. at 15-17.)

As a preliminary matter, the hearing transcript reveals that Judge Waldor was adequately informed of the facts underlying the BCPO's motion—*i.e.*, that a corporate representative of the BCPO had already been deposed in some capacity. For example, when Judge Waldor asked the Estate what information it sought to obtain from a Rule 30(b)(6) witness that it had not already received from "the prior 30(b)(6)," the Estate clarified, "Your Honor, the prior 30(b)(6), *I'm not certain, may have been noticed as a 30(b)(6). But the actual testimony was limited.*" (*See* 7/8/20 Transcript at 30:1-11 (emphasis added).) With that in mind, Judge Waldor considered arguments from the parties regarding the necessity of a Rule 30(b)(6) deposition—including what relevant information, if any, could be derived from such a deposition at this juncture—and determined that the request was "not substantiated." (*Id.* at 31:11-32:3.) Accordingly, the hearing transcript does not demonstrate that Judge Waldor relied on "erroneous factual assertions" underlying the BCPO's motion to quash, and the Court need not overturn her July 9 Order on that basis.

Neither *Munich Reinsurance* nor *Bracco* supports a contrary finding. In *Munich Reinsurance*, Judge Arpert denied the plaintiff's objections to the defendant's 30(b)(6) deposition notice and compelled the production of a corporate designee, reasoning that

8

deposition testimony from individual fact witnesses does not "relieve[] a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition." 2011 WL 1466369, at *26 (internal citation and quotation marks omitted).  But *Munich Reinsurance* did not set forth a *per se* rule that a 30(b)(6) deposition must be conducted in all cases; Judge Arpert observed that courts may not need to compel Rule 30(b)(6) depositions where, for example, the movant has already "produced significant discovery . . . to the extent that the deposition of [a] corporate designee . . . would be unduly burdensome." *Id.*  Judge Bongiovanni likewise did not set forth a *per se* rule in *Bracco*; rather, she explained the benefits of Rule 30(b)(6) depositions while reviewing certain objections lodged to 30(b)(6) deposition topics. *See* 2005 WL 6714281, at *1.  Accordingly, the record does not demonstrate that Judge Waldor misinterpreted or misapplied any applicable law in quashing the Estate's 30(b)(6) deposition notice on the BCPO.

The Estate next argues that Judge Waldor abused her discretion in quashing its third set of requests for the production of BCPO documents both because she failed to "set forth the basis of her rulings as to each numbered document request" on the record, and because she did not require the BCPO to demonstrate "undue burden or significant expense" through evidence, such as "affidavits, certifications, or facts." (July 9 Order Moving Br. at 18-20.)

As to the former argument, the Estate has not presented any controlling law that requires a magistrate judge to articulate the basis of her rulings as to each numbered document request on the record.  As to the latter argument, none of the cases offered by the Estate stands for the proposition that movants must present independent evidence to establish "undue burden or significant expense." *See, e.g.*, *E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 371-72 (3d Cir. 2012) ("evidence" is required for an inquiry into "fairly allocating the cost of compliance with an

9

administrative subpoena"); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (party resisting discovery must "show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive" (internal citation and quotation marks omitted)); *DIRECTV, Inc. v. Richards*, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005) (Brown, J.) (plaintiff failed to satisfy "*heavy* burden of proving" that the subpoena was unreasonable or oppressive). Accordingly, Judge Waldor's decision with respect to the Estate's third set of document requests on the BCPO was neither "clearly erroneous" nor "contrary to law."

There is no basis to set aside Judge Waldor's decision on the BCPO's motion to quash (D.E. 401), and the Estate's appeal as to that motion is denied.

### ii.    The DCJ's Motion to Quash 30(b)(6) Deposition Subpoena and Document Subpoena

As to the 30(b)(6) deposition subpoena served on the DCJ, the Estate rearticulates the argument it raised with respect to the document requests served on the BCPO—*i.e.*, that Judge Waldor erred in quashing the Rule 30(b)(6) subpoena because the DCJ failed to present any "evidence" of undue burden. (July 9 Moving Br. at 35-36.) As stated previously, the Estate has presented no controlling law requiring the movant to present affidavits, certifications, or other proofs of undue burden. The Estate also argues that Judge Waldor did not "assess any of the relevancy arguments advanced by Plaintiff's opposition brief," but that argument is contradicted by the hearing transcript. (*Id.* at 35.) Indeed, before she rendered her decision, Judge Waldor elicited argument from both the Estate and the DCJ on this issue—and the Estate informed Judge Waldor that it would "rely on [its] papers" to support its arguments. (*See* 7/8/20 Transcript at 36:14-39:16.)

The document subpoena at issue contained "six (6) discrete and highly relevant document requests" according to the Estate, as to which the DCJ lodged only "broad, non-specific objections." (July 9 Order Moving Br. at 36.) Again, the Estate's argument that Judge Waldor erred in quashing it is contradicted by the hearing transcript, which shows she considered a number of specific objections from the DCJ. For example, the DCJ argued that the document requests were not "narrowly tailored" because they "go back 40 years," contained "23 subcategories," and did not have "any bearing on the cause of action that [is] pled in the second amended complaint." (7/8/20 Transcript at 38:17-23.) Accordingly, the Court finds no "clear error" in Judge Waldor's decision to quash the document subpoena.[2]

The Estate has failed to show that Judge Waldor clearly erred in rendering her decision on the DCJ's motion to quash (D.E. 415) the 30(b)(6) deposition subpoena and document subpoenas served on the DCJ, and its appeal from her ruling is denied.

### iii. The DCJ's Motion to Quash Deposition Subpoena to Paul Morris

The Estate first argues that Judge Waldor "demonstrated a lack of knowledge of basic facts and therefore improperly weighed the relevancy factors for quashing the subpoena to Paul Morris." (July 9 Order Moving Br. at 26.) More specifically, the Estate claims that Judge Waldor "improperly weighed, or did not assess, key documents when she determined to quash the deposition of Morris." (*Id.*) That assertion is directly contradicted by the hearing transcript,

---

[2] The Estate's document subpoena was accompanied by a letter, which included a request to "provide dates" for the depositions of certain named current and former DCJ employees. (*See* 415-2 at Ex. A.) The Estate argues that Judge Waldor's decision to "quash the depositions of DCJ fact witnesses" was clearly erroneous because the "DCJ failed to meet its high burden and there are no findings on the record as to any of these individuals besides . . . Morris." (July 9 Order Moving Br. at 24.) However, the record reveals that Judge Waldor did hear argument from the Estate regarding those witnesses during the July 8 hearing before rendering her decision on the motion. (*See* 7/8/20 Transcript at 14:5-15.)

11

which demonstrates that Judge Waldor engaged in a lengthy colloquy about the pertinent facts and documents underlying the motion—including the fact that defendant Mordaga had already been deposed. (*See* 7/8/20 Transcript at 4:13-19:15.) Judge Waldor then proceeded to ask the Estate what further information Morris could provide, to which the Estate responded only that he "*may* have been given relevant information" about the allegations at issue. (*See id.* at 19:12-15 (emphasis added).) After considering those arguments, Judge Waldor soundly reasoned that "proportionality definitely comes into play," and ruled that "connecting the dots just isn't going to be advanced by continually serving subpoenas." (*Id.* at 19:16-22.)

The Estate also takes issue with Judge Waldor's alternative—*i.e.*, permitting the examination of Morris through single-question interrogatories. Citing no case law to support its position, the Estate argues that such a limited remedy is "not proportional to the needs of the case." (July 9 Moving Br. at 33.) However, magistrate judges have "broad discretion when deciding discovery motions." *Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 387 (D.N.J. 1990) (internal citation and quotation marks omitted). Accordingly, absent any evidence indicating that Judge Waldor misapplied or misinterpreted controlling law in imposing such a remedy, the Estate's argument fails.

Finally, the Estate argues that Judge Waldor abused her discretion under the factors in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973) when she quashed the Morris deposition subpoena. (July 9 Order Moving Br. at 32.) Again the hearing transcript shows otherwise: she acknowledged the Estate's reliance on the *Frankenhauser* factors "in [its] briefing, as an exception to [the] rule of nondisclosure," and asked the DCJ to address those factors. (*See* 7/8/20 Transcript at 6:14-16.) While the Estate is correct that Judge Waldor was required to consider the *Frankenhauser* factors "with an eye towards disclosure," *Torres v.*

12

*Kunzniaz*, 936 F. Supp. 1201, 1210 (D.N.J. 1996), the fact that she ultimately deemed non-disclosure appropriate does not constitute clear error. The Estate's appeal from her ruling is denied.

### iv. The Estate's Motion for a Stay and to Extend Discovery

Judge Waldor denied the Estate's motion (D.E. 405) for a stay and for a 60-day extension of the fact-discovery deadline. On appeal, the Estate argues that she "did not conduct the requisite analysis" needed on an extension motion, which alone "comprises an abuse of discretion," and further contends that an examination of the requisite factors demonstrates that "a further extension of discovery is not only warranted, but necessary." (July 9 Order Moving Br. at 37-38.)

Fed. R. Civ. P. 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Under Rule 16(b)(4), the burden is on the moving party to "demonstrate good cause and due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Importantly, "the 'good cause' standard is not a low threshold." *In re Paulsboro Derailment Cases*, 2015 WL 6163951, at *1 (D.N.J. Oct. 19, 2015) (Kugler, J.) (quoting *J.G. v. C.M.*, 2014 WL 1652793, at *1 (D.N.J. Apr. 23, 2014) (Martini, J.)). Accordingly, when analyzing a motion under Rule 16(b)(4), "[t]he existence of 'good cause' depends 'primarily on the diligence, or lack thereof, of the moving party.'" *In re Paulsboro*, 2015 WL 6163951, at *1 (quoting *Siebel v. Work At Home Vintage Employees*, LLC, 2013 WL 6094558, at *3 (D.N.J. Nov. 18, 2013) (Falk, Mag. J.)). The rationale for imposing such a high threshold on litigants is that "scheduling orders are at the heart of case management"; accordingly, their "utility w[ould] be severely impaired" if litigants disregard them "without a specific showing of good cause." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986).

This litigation's protracted procedural history supports Judge Waldor's decision to deny the Estate's request for a further extension of discovery. In November 2019, she had imposed a final March 31, 2020 fact-discovery deadline and specifically warned that she would not be granting any further extensions. (*See* D.E. 364.) Again during the July 8 hearing, Judge Waldor reminded the parties of her prior warning that she "wasn't going to allow [them] to meander to oceans of new requests," especially because on prior occasions she had "said 'no more discovery' and then sat back on [her] haunches and permitted it." (*See* 7/8/20 Transcript at 29:13-21.) Furthermore, the fact that the Estate waited until just before the close of fact discovery to issue a number of subpoenas and other discovery requests to both the BCPO and the DCJ weighs against a finding of good cause. (*See generally* D.E. 395, 401.)

Accordingly, Judge Waldor did not commit clear error in denying the Estate's motion (D.E. 405) for a stay and an extension of the fact-discovery deadline, and the Estate's appeal on that basis is denied.

### B. The Estate's Appeal of the August 26 Order

In the August 26 Order, Judge Waldor narrowed the Estate's interrogatories directed to Morris. The Estate argues this constituted an "abuse of discretion" because Judge Waldor rewrote, reframed, and/or struck the Estate's interrogatories in violation of *Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d. Cir. 1995); and because Fed. R. Civ. P. 33 prohibits the issuance of interrogatories to non-parties, such as Morris. (*See* D.E. 449-2, Aug. 26 Order Moving Br.)

In *Sempier,* the plaintiff served two sets of discovery on the defendant—both interrogatories and requests for production—and the defendant failed to adequately respond. Instead of compelling the answers plaintiff sought, the magistrate judge directed the plaintiff to issue a third set of interrogatories and document requests, to which the defendant again failed to

adequately respond.  Addressing this, the court instructed the defendant to answer a four question "Bill of Particulars," an antiquated procedural device that had been replaced decades earlier by the use of interrogatories.  On appeal, the district court affirmed the magistrate judge's order and added one additional question to the bill of particulars.  Dispositive motion practice followed, and the district court granted the defendant's motion for summary judgment.  The plaintiff appealed, arguing in part that the district court abused its discretion in ruling against the plaintiff's discovery efforts and effectively prevented him from marshalling additional evidence to satisfy his prima facie case.  The Third Circuit criticized the district court for "abandon[ing] the structure and command of the Rules to revive a procedural device abandoned in civil practice forty-five years [prior]," and held that the court "could not rewrite a party's questions and in effect serve its own set of interrogatories." 45 F.3d at 735.  Significantly, the Third Circuit clarified that "if discovery has reached an impasse or a nonproductive stage either through counsel's obstinacy, intransigence, or even incompetence, the district court can always, through appropriate intervention, suggest the proper manner in which questions should be asked and the answers furnished." *Id.* at 736.  Accordingly, "[a] district court's creativity in this respect is unrestricted, although it cannot, of course, disregard the commands of the Federal Rules of Civil Procedure or, as in this case, substitute a 'Bill of Particulars' for a party's relevant discovery." *Id*.

Consistent with the reasoning in *Sempier*, Judge Waldor reviewed the interrogatories submitted by the Estate—as well as the objections lodged to those interrogatories, which she expressly permitted the DCJ to file—and, in her discretion, allowed the interrogatories to proceed in a narrowed-down fashion.  Such a decision is good management, not clear error.

15

The Court next briefly turns to the Estate's argument regarding the propriety of serving interrogatories on non-parties under the Federal Rules of Civil Procedure.  Putting aside the contention raised by defendants and the DCJ that such an argument should have been raised in the Estate's appeal of the July 9 Order and is thus untimely (*see* Defs' Opp. Brs., D.E. 452-53; DCJ Opp. Br., D.E. 451), the Estate's argument lacks merit on its face because the federal rules permit parties to propound written questions on non-parties.  *See* Fed. R. Civ. P. 31(a)(1) (allowing a party to depose "any person" by "written questions").

## V.     Conclusion

The Court has carefully considered the Estate's arguments and finds they are without merit for the foregoing reasons.  Its appeals (D.E. 434, 449) are denied, and Judge Waldor's orders (D.E. 430, 448) are affirmed.  An appropriate order will issue.

Date: November 23, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.